UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DIOR FALL,      *Plaintiff*, | )<br>)<br>) |
| *vs.* | )  1:12-cv-1231-JMS-TAB<br>) |
| HON. JANET NAPOLITANO, *Secretary of Dept. of Homeland Security*, *et al.*,      *Defendants*. | )<br>)<br>) |

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Dior Fall seeks relief from the decision of the Board of Immigration Appeals (the "Board") affirming the decision of the United States Citizenship and Immigration Services ("USCIS"), which denied Ms. Fall's visa application. [Dkt. 23 at 2.] Defendants Janet Napolitano, as Secretary of the Department of Homeland Security, and Kamsing V. Lee, as Field Officer District Director of the USCIS, (collectively, the "Defendants") move for summary judgment in their favor on Ms. Fall's claim. [Dkt. 10.]  For the following reasons, the Court enters summary judgment in favor of the Defendants.

**I.**
**BACKGROUND**

The material facts at issue are not in dispute, except as noted.[1]  Ms. Fall was born in Senegal in 1963. [Dkt. 12-1 at 2.]  She married Ousmane Diop in Senegal and had two children in that country in 1989 and 1996, respectively. [Dkt. 12-2 at 1.]  Ms. Fall and Mr. Diop made vari-

---

[1] Ms. Fall agrees with 44 of the 48 facts set forth by the Defendants in support of summary judgment. [Dkt. 19 at 2-3.]  While she states that she "unequivocally disputes statements contained in the remaining paragraphs[,]" she does not identify any potentially determinative factual disputes she has with the assertions in those paragraphs.  [*Id.* at 3; *see* INSD L.R. 56-1 (b) (requiring the non-movant to identify "the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment").]

ous trips to the United States during their marriage, and a third child was born while Ms. Fall was here on a B-2 visitor visa in 2002. [*Id.*]

Ms. Fall and Mr. Diop had their marriage dissolved in Senegal in 2006 while they were both living in the United States. [*Id.*; dkts. 11 at 7; 19 at 2-3.] In March 2009, Ms. Fall married Darnell Overstreet, a United States citizen, in Indiana. [Dkt. 12-2 at 1.] Mr. Overstreet died from a gunshot wound a few months later. [*Id.*] The parties dispute whether Ms. Fall's marriage to Mr. Overstreet was valid.

On July 6, 2010, Ms. Fall filed a Petition for Widow (Form I-360), identifying herself as a widow of a United States citizen, requesting "immediate relative" status under the Immigration and Nationality Act so that she could receive a visa. [Dkt. 12-1 at 1, 12.] The USCIS requested additional evidence and Ms. Fall was subsequently interviewed by a USCIS officer. [Dkts. 12-3 at 1; 12-4 at 2.]

On November 3, 2011, the USCIS issued a decision denying Ms. Fall's visa petition. [Dkt. 12-4.] It concluded that Ms. Fall's Senegalese divorce is not recognized in Indiana and, therefore, not valid for immigration purposes because neither she nor Mr. Diop were physically present in Senegal when the divorce decree was issued. [*Id.* at 2.] The USCIS also discounted the documentation Ms. Fall submitted supporting her divorce from Mr. Diop, concluding that "in review of the submitted documents, it is unclear from who or what source they were obtained." [*Id.* at 3.] Finally, the USCIS concluded that Ms. Fall submitted insufficient evidence to prove that she married Mr. Overstreet in good faith and, instead, concluded that she "entered into a fraudulent marriage with Darnell Overstreet for the primary purpose of circumventing immigration laws." [*Id.* at 3-4.]

On December 2, 2011, Ms. Fall filed a notice of appeal from the USCIS decision with the Board. [Dkt. 12-9.] The Board ultimately dismissed Ms. Fall's appeal on July 26, 2012, agreeing that in Indiana, "courts ordinarily will not recognize a foreign nation's divorce decree unless at least one of the spouses was domiciled in the foreign nation when the decree was rendered." [Dkt. 12-10 at 1-2 (citing *Scherer v. Scherer*, 405 N.E.2d 40, 44 (Ind. Ct. App. 1980)).] Because Ms. Fall admitted to a USCIS officer in her interview that neither she nor Mr. Diop was physically present in Senegal at the time of the divorce, the Board also concluded that Ms. Fall's divorce from Mr. Diop was not valid under Indiana law. [*Id.* at 1.] Accordingly, the Board held that Ms. Fall was not free for immigration purposes to legally enter into the marriage with Mr. Overstreet in March 2009, and that the USCIS properly denied her petition to qualify for immediate relative status as the widow of a United States citizen. [*Id.* at 3.] The Board declined to address the USCIS's conclusions that Ms. Fall's documentation of her Senegalese divorce was inadequate or that she entered into a fraudulent marriage with Mr. Overstreet. [*Id.*]

On August 30, 2012, Ms. Fall filed a Complaint, asking this Court to review the Board's denial of her visa petition. [Dkt. 1.] This Court has jurisdiction to review the denial of an immediate relative visa petition. [*See* dkts. 23 at 2-3; 24]; *see also Ogbolumani v. Napolitano*, 557 F.3d 729, 733 (7th Cir. 2009) (agreeing with the district court that the immediate relative visa statute "leaves no discretionary wiggle room; instead, the resolution of this type of petition is circumscribed by an explicit legal standard" and jurisdiction exists). Defendants' Motion for Summary Judgment, [dkt. 10], is now ripe for review.

## II.
### DISCUSSION

The Defendants request that the Court enter summary judgment in their favor because they contend that the Board correctly concluded that Ms. Fall's marriage to Mr. Overstreet, a

United States citizen, was void because her Senegalese divorce from her previous spouse, Mr. Diop, was not recognized under Indiana law. [Dkt. 11 at 17.] The Defendants heavily rely on *Scherer v. Scherer*, 405 N.E.2d 40, 44 (Ind. Ct. App. 1980), which they claim held that Indiana does not recognize foreign divorce decrees if neither spouse was domiciled in the foreign country at the time of the divorce. [*Id.* at 18.]

Ms. Fall disputes the Defendants' interpretation of *Scherer* and cites other portions of that opinion that she contends confirm that it does not set forth an absolute rule. [Dkt. 19 at 10-11.] Additionally, Ms. Fall makes an equal protection claim related to what she perceives to be the Defendants' "disparate allocation of federal immigration benefits" based on the application of various state laws. [*Id.* at 12-15.]

### A.  Applicable Law

Pursuant to 8 C.F.R. § 204.2(b), a widow of a United States citizen may file a petition to be classified as an immediate relative and petition for a visa. The petitioner must submit a certificate of marriage, evidence of the United States citizen's death, evidence supporting the authenticity and credibility of the marriage, and "proof of the termination of all prior marriages of both husband and wife." 8 C.F.R. § 204.2(b)(2). In visa petition proceedings, the burden of establishing eligibility for the benefits sought under the immigration laws rests upon the petitioner. *Matter of Annang*, 14 I. & N. Dec. 502, 502-03 (BIA 1973).

In cases where a marriage follows a divorce, the Court "look[s] at the prior divorce in light of the law of the state of celebration of the subsequent marriage for the purpose of determining whether or not that state will recognize the validity of the divorce." *Matter of Ma*, 15 I. & N. Dec. 70 (BIA 1974). Accordingly, because Ms. Fall seeks immigration benefits based on

her marriage to Mr. Overstreet in Indiana, the law of Indiana applies to determine the validity of her Senegalese divorce from Mr. Diop.

In *Scherer*, the husband and wife entered into a foreign divorce in the Dominican Republic.  405 N.E.2d at 42.  The husband later filed a petition for dissolution of marriage in Indiana, seeking an equitable distribution of property.  *Id.*  The wife asserted several affirmative defenses, including that the prior Dominican Republic divorce decree barred the Indiana proceeding.  *Id.*  On appeal, the Indiana Court of Appeals held that "[o]rdinarily, recognition of such foreign decrees depends upon whether at least one of the spouses was domiciled in the foreign nation when the decree of divorce was rendered."  *Id.* at 44.

*Scherer* recognized that certain equitable doctrines, such as estoppel, laches, or unclean hands, may prevent a party from attacking the validity of a divorce decree.  *Id.* ("Accordingly, in a proper case, a person may be precluded from attacking the validity of a foreign divorce decree if under the circumstances it would be inequitable for him or her to do so.").  The court ultimately concluded that the husband's conduct before and after the foreign divorce estopped him from attacking the validity of the Dominican Republic decree because "[p]articipation in obtaining a foreign decree may be evidence of consent, and may thus prevent a party from attacking the decree."  *Id.* at 45.

### B.  Whether Indiana Recognizes Ms. Fall's Senegalese Divorce

Ms. Fall does not argue that an equitable exception from *Scherer* applies in her case, but she cites those exceptions to emphasize that *Scherer* did not establish an absolute rule concerning Indiana's recognition of a foreign divorce decree.  [Dkt. 19 at 10-11.]  She further notes that Defendants have not cited authority allowing them to collaterally attack Ms. Fall's foreign divorce decree.  [*Id.* at 11.]

While the Court agrees that *Scherer* does not set forth an absolute rule since certain equitable exceptions can apply, the case confirms Indiana's position that foreign divorce decrees will generally not be recognized unless "at least one of the spouses was domiciled in the foreign nation when the decree of divorce was rendered." 405 N.E.2d at 44. Ms. Fall argues that this language is dicta, but the statement was a considered expression on the issue and the Court must apply Indiana law to determine the validity of Ms. Fall's divorce for purposes of her visa petition. *See United States v. Bloom*, 149 F.3d 649, 652-53 (7th Cir. 1998) (noting that an informed, rather than casual, court statement should be followed and it "would ill serve the interests of litigants and the judicial system as a whole to row against the tide of such statements").[2]

Ms. Fall admitted to a USCIS officer that neither she nor Mr. Diop was physically present, much less domiciled, in Senegal at the time of the divorce. [Dkt. 12-10 at 1.] Therefore, Indiana did not recognize her Senegalese divorce as valid, and her subsequent marriage to Mr. Overstreet was void. *See* Ind. Code § 31-11-8-2 ("A marriage is void if either party to the marriage had a wife or husband who was living when the marriage was solemnized."). Although Ms. Fall argues that the Defendants have not proven that they have the authority to attack the validity of the Senegalese divorce decree, that argument ignores the fact that as the petitioner seeking a visa, it is her burden to establish that she is eligible for the benefits she seeks. *Matter of Annang*, 14 I. & N. Dec. at 502-03. To meet that burden Ms. Fall must prove, among other things, that any prior marriages have been terminated consistent with the law of the state where

---

[2] The Court agrees with the Defendants that Ms. Fall's reliance on an immigration case based on New York law is misplaced. *See Matter of Luna*, 18 I. & N. Dec. 385, 386 (BIA 1983) (noting that "New York, *unlike many other states in the United States*, will recognize a divorce decree rendered in a foreign country not based on domicile of either of the parties provided there is some physical presence on the part of at least one party within the jurisdiction of the court rendering the divorce, and some type of appearance or submission to jurisdiction by the other party") (emphasis added).

the subsequent marriage took place—Indiana. 8 C.F.R. § 204.2(b)(2); *Matter of Ma*, 15 I. & N. Dec. 70. She has not done this. Therefore, the Court concludes that the Board did not err by affirming the USCIS's decision denying Ms. Fall's visa petition on this basis.

### C. Equal Protection Claim

Ms. Fall alleges that the Defendants disparately allocate federal immigration benefits based on the application of various state laws, and that this violates the equal protection clause of the United States Constitution. [Dkt. 19 at 12-15.] She emphasizes that the Board has issued decisions taking different positions on the validity of a foreign divorce decree based on the law of various states. [*Id.* at 13 (collecting cases).]

The Defendants argue that Ms. Fall's equal protection claim fails because binding precedent confirms that states may determine how their residents enter into a marital relationship and that the Board applies the applicable laws equally to each state's residents. [Dkt. 21 at 10.] While the Defendants do not dispute that this may lead to different results for aliens located in different states, it emphasizes that Ms. Fall does not allege that citizens within each state are treated differently or that the Board treats marriages deemed valid in one state differently than marriages deemed valid in another for purposes of available immigration benefits. [*Id.* at 11.]

The Fourteenth Amendment provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." The United States Supreme Court has held that "[a]liens, even aliens whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments." *Plyler v. Doe*, 457 U.S. 202, 210 (1982). "[T]he protection of the Fourteenth Amendment extends to anyone, citizen or

stranger, who is subject to the laws of a State, and reaches into every corner of a State's territory." *Id.* at 215.

Ms. Fall concedes that rational basis scrutiny applies to her equal protection claim. [Dkt. 19 at 13.] Therefore, "a governmental classification must be upheld against equal protection challenge if there is *any* reasonably conceivable state of facts that could supply a rational basis for the classification." *Smith v. City of Chicago*, 457 F.3d 643, 651 (7th Cir. 2006) (emphasis in original).

"The well-established rule is that it is the function of the state to determine how its residents may enter into the marital relationship." *Matter of Hosseinian*, 19 I. & N. Dec. 453, 455 (BIA 1987); *see also United States v. Lutwak*, 195 F.2d 748, 762 (7th Cir. 1952) ("The general rule of conflict of laws is that the marital status is governed by the law of the State of domicile.") (citing *Loughran v. Loughran*, 292 U.S. 216, 223 (1934)). Accordingly, there is not a uniform federal standard for determining the validity of a marriage for immigration purposes. *Matter of Hosseinian*, 19 I. & N. Dec. at 455.

The Court agrees with the Defendants that Ms. Fall's equal protection challenge fails because of the well-established right of a state to determine the validity of a marriage within its borders. Therefore, any distinction in the Defendants' classifications of the status of married aliens (*i.e.*, declaring a marriage invalid in Indiana based on Indiana's state law but declaring a similar marriage valid in another state based on that state's law) is rationally related to accomplishing the recognized function of each state to determine the validity of marriages within its borders. Ms. Fall does not argue that the Defendants treated her differently than anyone else in Indiana. Her argument that she would have been treated differently had she lived in New York (because New York allegedly would have recognized her foreign divorce and re-marriage) ig-

nores the well-established right of Ms. Fall's state of marriage (Indiana) to determine the validity of a marriage within its borders. For these reasons, the Court concludes that Defendants' actions pass rational basis review, and Ms. Fall's equal protection claim fails.

### III.
#### CONCLUSION

For the reasons stated herein, the Court **GRANTS** Defendants' Motion for Summary Judgment. [Dkt. 10.] Judgment in favor of the Defendants will enter accordingly.

05/09/2013

                                                                  *[signature]*
                                             Hon. Jane Magnus-Stinson, Judge
                                             United States District Court
                                             Southern District of Indiana

**Distribution via ECF only:**

Swaray Edward Conteh
contehlaw@att.net

John Joseph William Inkeles
US DEPT OF JUSTICE
John.inkeles@usdoj.gov

Jill Z. Julian
UNITED STATES ATTORNEY'S OFFICE
jill.julian@usdoj.gov